**In re Miriam RIZZO–CHEVERIER, Debtor.**

**No. 01–37895(CGM).**

United States Bankruptcy Court, S.D. New York.

March 22, 2007.

Mirriam Rizzo–Cheverier, Pine Bush, NY, Pro Se.

Dennis Jose, Esq., Steven J. Baum, P.C., Amherst, NY, for Wells Fargo Bank.

John DiCaro, Esq., Shapiro & DiCaro, LLP, Rochester, NY, for Washington Mutual Home Loans.

## MEMORANDUM DECISION

CECELIA G. MORRIS, United States Bankruptcy Judge.

In the United States Bankruptcy Court for the Southern District of New York, Poughkeepsie Division, less than 70 percent of Chapter 13 debtors fail to complete the reorganization process and do not obtain a discharge.[1] This decision concerns one of the few debtors who successfully completed a five-year plan process. But, the Debtor's successful reorganization was almost derailed by the poor record keeping of a secured creditor. The facts of the situation called for this Court to invoke 11 U.S.C. § 105, a power used only in extreme and rare circumstances, to intercede in order to prevent the Debtor's discharge from being violated and her "fresh start" jeopardized.

### BACKGROUND[2]

On December 3, 2001, Miriam Rizzo–Cheverier ("*Debtor*") filed this Chapter 13 petition. The Debtor's amended plan, confirmed on June 6, 2002, provided for payments of $200 per month for six months and $434.64 for 52 months.[3] According to the Chapter 13 Trustee's final report dated July 21, 2006, the Debtor completed all plan payments, a total of $21,838.62, paying 100% of all creditors' claims. This amount included the secured arrearages claim of Fleet Mortgage Group totaling $14,504.53.

On March 1, 2004, the successor-in-interest to Fleet Mortgage, Washington Mutual Home Loans ("*Washington Mutual*") requested relief from the automatic stay under 11 U.S.C. § 362 with regards to Debtor's home located at 266 Maple Street in Pine Bush, New York. Washington Mutual alleged that Debtor had failed to make post-petition mortgage payments for the months of January 2004 and February 2004.

Debtor filed a timely opposition to the motion, along with evidence supporting her claim that she had previously paid to Washington Mutual the post-petition payments it alleged she owed. The parties appeared before the Court on March 16, 2004 and again on April 6, 2004 to argue Washington Mutual's motion.

At the March 16, 2004 hearing, Washington Mutual acknowledged receipt of Debtor's payments for the months of January and February 2004. Washington Mutual asserted that the Debtor's payments (of approximately $781 per month[4]) were insufficient to cover an increase in taxes assessed to her property. Washington Mutual explained Debtor's monthly mortgage payments should have been $972 per month. The Debtor disputed any such tax increase, and the Court, noting Washington Mutual was claiming Debtor's mortgage payments had increased by almost $200 per month, granted a three-week ad-

---

1. In 2001, 506 Chapter 13 cases were filed in the Poughkeepsie Division; only 136 received a Chapter 13 discharge. In 2000, 1,576 Chapter 13 cases were filed in the Southern District of New York, of which 254 eventually received a discharge in Chapter 13.

2. The following comprise the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

3. Elsewhere the amended plan states that the duration is 60 months.

4. Washington Mutual has never explained how it derived Debtor's monthly mortgage payment amount. At the March 12, 2007 hearing, the Court took judicial notice of a letter in Debtor's possession from Washington Mutual dated October 2002 which listed her monthly mortgage payment amount as approximately $781.00. Washington Mutual did not have a copy of the letter nor did its counsel or corporate representative know if its existence.

journment to allow Washington Mutual to review its records.

The parties next appeared before the Court on April 6, 2004. At this time, Washington Mutual acknowledged Debtor's taxes had not increased. Instead of withdrawing its motion, Washington Mutual offered an entirely different explanation for the alleged increase in the amount of Debtor's monthly payments—it now claimed to have overpaid Debtor's insurance and was now in the process of reconciling her account. The Court found their explanation unsatisfactory and scheduled an evidentiary hearing for April 23, 2004. The Court directed a representative from Washington Mutual to appear to explain how Debtor's new payment amounts were tallied.

At the close of the April 6, 2004 hearing, Washington Mutual asked the Court if the evidentiary hearing would still go forward if the matter settled beforehand. The Court replied:

> If you settle [this matter] and [Debtor] has done everything she says ... I want to [be] sure that the Order includes [a provision] that nothing will be charged to this mortgage, and absolutely no fees will be put on this mortgage in an attempt to go against this Debtor.

Washington Mutual indicated that it understood the Court's order and would not bill the Debtor's account for attorney's fees and costs associated with any of its post-petition motions[5] if it was discovered that the Debtor was not in default with her post-petition mortgage payments.

On April 21, 2004 Washington Mutual withdrew its motion to lift the stay. (Electronic Case Filing ("ECF") Docket No. 20) In its letter, Washington Mutual confirmed it would not attempt to collect attorney's fees and costs related to its motion from the Debtor.

Debtor received her discharge on March 15, 2006 and notice was sent to Washington Mutual the same day. Approximately one month after Debtor received her discharge, Washington Mutual threatened to foreclose on her property. Washington Mutual alleged that Debtor was delinquent in paying her March 2006 and April 2006 mortgage payments. The two payments plus late fees and unspecified "corporate advances" totaled $1,654.05.

Debtor, who was now acting pro se, contacted Washington Mutual to resolve the matter. Debtor spoke with various Washington Mutual representatives and explained she was current with her mortgage payments. According to the Debtor, Washington Mutual acknowledged receipt of her payments, but the sums were applied to attorney's fees arising from unspecified litigation. After the Debtor made several unsuccessful attempts to settle the matter, she contacted the Court by letter dated May 12, 2006, asking for assistance. (ECF Docket No. 24)

On May 18, 2006, this Court issued an Order directing a corporate representative of Washington Mutual to appear at a hearing scheduled for May 23, 2006 to show cause why Washington Mutual should not be liable for violating the Debtor's discharge. (ECF Docket No. 25) When a corporate representative failed to appear, the Court held Washington Mutual in contempt and set a hearing for May 30, 2006 to allow Washington Mutual an opportunity to purge its contempt. (ECF Docket No. 27)

In the interim, on May 22, 2006, Debtor received a letter dated May 17, 2006 from Washington Mutual ("May 17, 2006 Let-

---

5. In May 2002, Washington Mutual filed an objection to Debtor's proposed Chapter 13 plan. They withdrew their objection on June 11, 2002. (ECF Docket No. 9)

*ter*") stating in large typeface: "WE MAY REPORT/HAVE REPORTED INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT." (ECF Docket No. 28)

On May 26, 2006, Washington Mutual filed a response to the Court's May 18, 2006 Order. (ECF Docket No. 29) Washington Mutual acknowledged it had applied Debtor's monthly mortgage payments to its fees it charged the account in error. It assured the Court, as of May 22, 2006, the problem had been corrected. Washington Mutual's response also noted the Debtor's loan was now "current and due for the monthly payment due June 1, 2006."

At the May 30, 2006 hearing, a representative of Washington Mutual appeared before the Court and acknowledged Washington Mutual had applied Debtor's payments to attorney's fees and litigation costs charged to the Debtor's account. Washington Mutual's representative confirmed the error had been corrected and the Debtor's account was current as of June 2006. The Court specifically inquired if all of the attorney fees and costs had been removed from the Debtor's account. Washington Mutual affirmatively replied that the charges were removed. The Court then confirmed with the representative that these fees and costs would not be added to the account at a later time. Washington Mutual assured the Court that measures had been taken to prevent a reoccurrence of the problem.

At the conclusion of the May 30, 2006 hearing, the Court found Washington Mutual had violated Debtor's discharge and ordered it to pay Debtor $1,000.00 in damages. Washington Mutual was also ordered to "flag" Debtor's account in an effort to avoid future errors.

On January 31, 2007, Debtor (still acting *pro se*) contacted this Court concerning Washington Mutual's alleged continued misapplication of her mortgage payments in violation of her discharge. (ECF Docket No. 35) After due deliberation, a hearing was set for February 13, 2007 to consider the Debtor's allegations and whether cause existed to reopen her case.

Debtor appeared at the February 13, 2007 hearing and presented proof to support her claim. Based on the evidence presented, sufficient evidence was found to reopen Debtor's case and set a hearing for March 6, 2007 to address Debtor's allegation that Washington Mutual had violated her discharge. By an Order dated February 15, 2007 the Court reopened the matter and directed a corporate representative from both Washington Mutual and Wells Fargo,[6] the new "servicer" of Debtor's mortgage, to appear at the March 6, 2007 hearing. (ECF Docket No. 36)

On February 28, 2007, Wells Fargo filed a response to Debtor's January 31, 2007 letter. Attached to Wells Fargo's response was a copy of Washington Mutual's June 14, 2006 letter to Debtor and a spreadsheet listing transactions posted to Debtor's account from January 15, 1999 to June 7, 2006 (*"June 14, 2006 Spreadsheet"*).[7]

Wells Fargo appeared at the March 6, 2007 hearing without a corporate representative in attendance. Wells Fargo's coun-

---

**6.** This Court took judicial notice of a letter sent to Debtor signed by Leesa Whitt–Potter, Senior Vice President of Wells Fargo Home Mortgage, notifying her that her mortgage was being transferred to Wells Fargo Home Mortgage on or around February 16, 2007.

**7.** The spreadsheet consists of six pages with approximately 25–35 transactions on each page.

sel had insufficient knowledge of Debtor's mortgage account to answer the Court's inquiry. Moreover, Washington Mutual failed to appear either through a corporate representative or legal counsel. Both Wells Fargo and Washington Mutual were held in contempt of the February 15, 2007 Order. A hearing was scheduled for March 12, 2007 to allow both Washington Mutual and Wells Fargo an opportunity to purge their contempt.

At the March 12, 2007 hearing, counsel for both Washington Mutual and Wells Fargo appeared along with Michelle Leipuner, a senior asset recovery specialist employed by Washington Mutual. A corporate representative of Wells Fargo did not appear.

During the hearing, the Court reviewed each transaction listed on the June 14, 2006 Spreadsheet with Ms. Leipuner, Debtor and counsel for both Washington Mutual and Wells Fargo. Evidence was presented that Washington Mutual possibly disbursed more funds from the Debtor's escrow account during Debtor's "petition period" than it received from postpetition payments. Furthermore, the evidence seemed to indicate that Washington Mutual used funds received from the Chapter 13 Trustee to account for the shortfall.[8] The Court questioned Ms. Leipuner and counsel as to why Washington Mutual would allow a deficit to be created in the Debtor's account (apparently without notice to the Debtor or the Court) and then use funds allocated for pre-petition debt to pay post-petition charges. As in previous hearings, Washington Mutual's representative and counsel were unable to provide the Debtor or this Court with an explanation for its actions.

Washington Mutual was also questioned why the May 17, 2006 letter was sent to Debtor and if the credit bureaus had been contacted. Ms. Leipuner was unable to verify whether Washington Mutual followed through with its threat to contact credit bureaus concerning Debtor's account. She further explained that the letter was automatically generated according to company policy and procedures and could offer no other explanation.

### JURISDICTION

Under 11 U.S.C. § 350(b) a court is permitted to reopen a bankruptcy case to "accord relief to the debtor." Furthermore, this Court has jurisdiction over contested matters pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. The Court finds that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate), (B) (allowance or disallowance of claims against the estate) and (O) (proceeding affecting the adjustment of the debtor-creditor relationship).

Furthermore, "[w]hile it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited ... a court is well within its authority if it exercises its equitable powers to enforce a specific code provision ... such as [11 U.S.C.] § 524." *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 444 (1st Cir.2000) (citations and internal quotations omitted). A court may invoke its 11 U.S.C. § 105(a) authority "if the equitable remedy utilized is ... necessary to preserve a right elsewhere provided in the Code ... so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights." *Id.* at 445 (citations and

---

8. The Court notes that Washington Mutual does not assert it is owed an arrearage.

internal quotations omitted). After due consideration and in light of the facts presented, the Court finds it necessary and appropriate to exercise its jurisdiction in this reopened case to address Washington Mutual's violation of the Debtor's discharge.

### DISCUSSION

■ "Congress made it a central purpose of the bankruptcy code to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts." *In re Bogdanovich,* 292 F.3d 104, 107 (2d Cir.2002). Moreover, "[t]he protection afforded by the discharge is ... [a] critical feature of every bankruptcy proceeding." *In re Manzanares,* 345 B.R. 773, 781 (Bankr.S.D.Fla.2006) citing *Central Virginia Community College v. Katz,* 546 U.S. 356, 126 S.Ct. 990, 996, 163 L.Ed.2d 945 (2006). Specifically, 11 U.S.C. § 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" There is no doubt that bankruptcy law is intended to assist an honest but unfortunate debtor, such as the one before this Court, in receiving the benefits of the Bankruptcy Code's central purpose—a fresh start.

At the March 12, 2007 hearing, which lasted several hours, the Court heard testimony from Ms. Leipuner concerning Washington Mutual's record-keeping and account management practices. The Court notes that Washington Mutual has often stated to Debtor that her mortgage payments were insufficient. But when the Debtor asked for an explanation as to how her payment amount was derived, Washington Mutual offered one excuse after another varying from tax increases to insurance overpayment to litigation fees. The Court did not (and still does not find) any of these explanations were (or are) credible. Furthermore, the Court finds the evidence presented at the March 12, 2007 hearing that Washington Mutual possibly disbursed more funds from the Debtor's escrow account during Debtor's "petition period" than it received from post-petition payments is not any more valid that its previous excuses.

At the close of the hearing and after considering all of the evidence presented, the Court found Washington Mutual's poor record-keeping was the sole cause of confusion surrounding the Debtor's account. The Court also found the Debtor, in addition to repaying all of the arrears due to Washington Mutual in her Chapter 13 plan (which included attorney's fees and litigation costs resulting from a related state court action), had timely paid all of her post-petition mortgage payments.

The Court acknowledges Washington Mutual's conduct does not fit neatly within the prohibitions of the Bankruptcy Code—its actions were not the typical inadvertent or blatantly willful attempt to collect a pre-petition debt in violation of the automatic stay or discharge injunction. The Court also acknowledges the attorney's fees and costs Washington Mutual assessed to the Debtor were related to post-petition motion practice and court appearances. However, the Court denied Washington Mutual from recovering post-petition attorneys' fees and costs in this matter, yet they still attempted to collect them from the Debtor.

Washington Mutual's consistent inability to maintain clear, orderly and accurate records of the Debtor's account spans several years and has persisted despite multiple warnings from the Court. Since at least March 2004, Washington Mutual has

continued to assert bogus charges and to claim, erroneously, that the Debtor failed to timely make monthly mortgage payments. Each occurrence threatened to derail the Debtor's reorganization attempts. Their conduct has effectively interfered with the Debtor's attempt to reorganize and obtain a "fresh start" under the Bankruptcy Code and violated the Debtor's discharge pursuant to 11 U.S.C. § 524(a)(2).

But for the fact that this Debtor was exceptionally astute and diligent, Washington Mutual's errors would have resulted in stay relief, leading to loss of the Debtor's home in foreclosure, followed almost certainly by the Debtor's failure to complete her Chapter 13 plan and receive a discharge. Washington Mutual threatened to, and perhaps did, relay incorrect information to credit-reporting agencies, which would damage the Debtor's credit rating and thwart her ability to maintain the "fresh start" she has so diligently worked for and deserves.

### CONCLUSION

A Chapter 13 debtor's hard-earned discharge would be meaningless if creditors are able to collect fees they incurred in baseless attempts to obtain stay relief during the pendency of the bankruptcy case. It is unlikely that Washington Mutual's conduct in this case is the result of an affirmatively willful or intentional refusal to abide by the Court's rulings. Nevertheless, whether Washington Mutual acted deliberately or due to an institutional inability to rectify its own accounts, it makes little difference for the Debtor who has done everything possible to save her home from foreclosure and begin anew.

Based on the forgoing, this Court finds that Washington Mutual has violated Debtor's discharge under 11 U.S.C.

§ 524(a)(2). A separate order addressing damages and further relief will be issued.